Day, J.
 

 This action in
 
 quo warranto
 
 was instituted in the Court of Appeals of Clark county to test the right of the relators, William Mills and others, to be seated as directors of the Petticrew Real Estate Company. It involves the rule applicable to the voting rights of common and preferred stock in corporations. The facts incident thereto may be briefly stated as follows:
 

 
 *492
 
 The company was originally organized with a capital stock of $30,000, divided into shares of $100 each. Subsequent thereto the articles of incorpora-tion were amended, so as to authorize an increase of the capital stock from $30,000 to $100,000, divided into 1,000 -shares of the par value of $100 each, of which 400 were to be common and 600 preferred; the latter to draw 7 per cent, dividend per annum. All of said increased capital stock, both common and preferred, was subscribed and issued. At a later date, to wit, March 28, 1921, an amendment to- the articles of incorporation was again authorized, increasing the capital stock to $750,000, divided into $250,000 common and $500,000 preferred, the preferred stock to draw 8 per cent., instead of 7 per cent., as previously allowed, and substitution of the previous issue of preferred stock was provided for, and retirement of the outstanding preferred stock effected. In the same amendment the par value of the shares of preferred stock remained at $100, while the shares of common stock were reduced to the par value of $10. No restriction or qualification upon the voting power of either stock was made in the certificate of incorporation or its amendments.
 

 It was further provided in the resolution increasing the capital stock, last above referred to:
 

 “That if the company shall fail to declare any dividend on the preferred stock, and such failure shall continue until the next succeeding dividend date, * * * then the preferred stock shall have the right to vote as long as such failure, violation, or default continues.”
 

 The record discloses- tha-t there was a default
 
 *493
 
 in declaring a dividend for a year, and it is claimed that thereby the preferred stockholders became entitled to the right of exercising the voting power under the articles of incorporation. The members of the board of directors having resigned, a special meeting of the stockholders was held for the purpose of electing a new board of directors for the unexpired terms and vacancies caused by such resignations.
 

 It is averred in the petition that at the time of this meeting there was issued and outstanding the amount of $124,800 of the preferred stock, divided into 1,248 shares, of the par value of $100 each, and $39,810 of the common stock, divided into 3,981 shares, of the par value of $10 each. The entire issued common stock of the corporation was represented at the meeting, and preferred stock in the sum of $105,100 was represented. There were 10 candidates in all, and 7 directors to be elected. The petition alleges that William Mills, C. B. Parrish, J. D. Cotter, George H. Willenborg, and Earl Martin, the relators, were all duly placed in nomination for the office of directors of such corporation and received the votes of the owners and holders of 1,013 shares of the preferred capital stock, who by cumulating their votes upon five only of seven directors to be elected oast 1,418 votes each in favor of the election of each of the relators.
 

 It is also averred that the defendants, owners and holders of common stock of the par value of $35,960 and of the preferred stock of a par value of $4,000, claimed the right to and did cast 3,596 votes, based upon a par value of $10 a share for
 
 *494
 
 the common, and 40 votes, based upon a par value of $100 a share for the preferred, and by cumulating their votes produced the following result: For defendant Stanley S. Petticrew, 5,045 votes; for defendant Charles N. Keith, 5,018 votes; for defendant A. Q-. Lamborn, 5,018 votes; for defendant Andrew Marmon, 5,018 votes; for defendant Harry Muffler, 5,027 votes.
 

 There were seven directors to be elected. Each class of stockholders placed in nomination five candidates and cumulated their votes thereon. As a result, two of the nominees of each class were elected by whatever rule the votes were counted. These four, about whom no controversy exists, are Willenborg and Martin, representing the preferred stockholders, and Petticrew and Muffller, representing the common stockholders. So that the controversy involves the' title to office of Keith, Lamborn, and Marmon, representatives of the common stockholders, whose offices are claimed by Mills, Farrish, and Cotter, who represent the preferred stockholders.
 

 The inspectors of the election having counted the ballots on the rule of one vote for each share, common or preferred, the president of the meeting declared that the following were the duly elected board of directors: Petticrew, Keith, Lamborn, Marmon, Willenborg, Martin, and Muffler. This action in
 
 quo waritmto
 
 was then begun in the Court of Appeals to test the right of the defendants to exercise and enjoy the office of directors in the Petticrew Keal Estate Company, a private corporation.
 

 The principal claim is that the common stock was illegally divided into shares of $10 each, and
 
 *495
 
 that the holders of the common stock should have voted on the basis of $100 in money value; that is to say, one share of preferred to be equal to ten shares of common in voting power, and that if the votes had been so counted the five relators would have been elected as directors of the corporation, and the defendants below, plaintiffs in error herein, would have been defeated for election on the board of directors.
 

 The question then is: May a corporation, by amendment of its articles of incorporation, make the par value of one class of stock lower than the par value of the other class of stock, when both classes prior to the amendment had been of the same par value, and thereafter each share of stock be entitled to vote on an equality at an election for directors?
 

 In Ohio corporations the right of stockholders to vote for election of directors is controlled by Section 8636, General Code, which section provides:
 

 “Each stockholder shall have the right to vote * * * the number of shares owned by him for as many persons as there are directors to be elected, or to cumulate his shares * * V’
 

 Section 86691 provides:
 

 “A corporation issuing both common and preferred stock may create designations, preferences, and voting powers, or restrictions or qualifications thereof, in the certificate of incorporation *
 

 The record discloses that this amendment to the articles of incorporation of March 28, 1921, was assented to by all stockholders, and the preferred stockholders accepted the substitution provided for
 
 *496
 
 therein. No qualification or restriction of voting power of either class of stock was provided for in the amendment, as might have been done under the provisions of Section 8669,
 
 supra.
 

 We are of the opinion that Section 8636, as above quoted, giving each stockholder the right to vote the number of shares owned by him, confers upon each holder of the common stock the right to vote the number of shares he holds, the same as the holder of the preferred stock has the right to vote the shares owned by him.
 

 It is the contention of the defendants in error that the voting power of each class of stockholders should be based upon their aliquot part of the entire corporate capital. "While such might be highly desirable from some standpoints, we doubt whether the statute authorizes such a conclusion. Corporations are the creatures of statutory enactment, and we find no inhibition against increasing the number of shares into which the capital stock of a corporation is divided, and against changing the par value of either or both kinds of shares.
 

 In Ohio the relation between the corporation and its stockholders, and of stockholders among themselves, is contractual, and we find nothing in the articles of incorporation in this record which forbids each share of stock, whether common or preferred, being entitled to one vote at an election for directors.
 

 It would have been entirely possible to have carried into the certifieajte of incorporation, or the ■amendments thereof, any qualification or restriction upon the voting powers of either common or preferred stock that the stockholders desired.
 

 In
 
 State ex rel. Chapman
 
 v.
 
 Urschel,
 
 104 Ohio
 
 *497
 
 St., 172, 186, 187, 135 N. E., 630, it was held that preferred stock in Ohio corporations has equal voting' power with every other class, unless limitations or restrictions upon such power are made in the certificate of incorporation, and that such restrictions or qualifications cannot otherwise be created.
 

 It would therefore seem to follow that the right, of common stock to vote, in the absence of restrictions or qualifications thereon, would be on a parity with the preferred.
 

 In the case of
 
 Miller, Ex’r.,
 
 v.
 
 Ratterman, Treas.,
 
 47 Ohio St., 141, 24 N. E., 496, it was held that there might be an entire denial of the voting rights of preferred stockholders. On page 158 of the opinion (24 N. E., 500), Spear, J., says:
 

 “Nor is it, in this instance, unreasonable. The promise to the preferred stockholders was to award them the first net earnings; the holders of the common stock to share in such of the net earnings as they might, by good management, be able to make over and above the 8 per cent. As the burden was upon the common .stockholders, the power to manage might fairly be left -with them, in a in-view, it is fair to treat the proviso as but an arrangement between two classes of stockholders which did not concern the public. It is true that one characteristic of stock generally is that it can be voted upon. But this is not essential. Indeed, instances may arise where it is good policy to prohibit the voting upon stock. * * * And the point here is, not whether any question of public policy intervenes to make it improper for the preferred stockholders to possess a right to vote, but whether any such question intervenes to make it imperative that they shall have that right.”
 

 
 *498
 
 This record discloses no fraud or misrepresentation. All the stockholders, both preferred and common, consented to the amendment and accepted the results thereof. We feel they are bound by any consequences that follow, because our corporation laws provide that each stockholder has a, right to vote the number of shares, owned by him for as many persons as there are directors to be elected, or to cumulate his votes. These shares may be common or preferred, or both; there being no qualifications or restrictions on the voting power in the certificate of incorporation, they stand upon an equality.
 

 We therefore hold that each share, common or preferred, was entitled to one vote; and at the meeting for the election of directors shown in this record the correct application of the right of stockholders to vote was made, and the plaintiffs in error were properly elected as directors of the corporation.
 

 We have examined the authorities cited in the defendant in error’s brief, and are of opinion that the same are not controlling, owing to the differences in the corporation laws of this state and the statutes and laws of the jurisdictions cited.
 

 Entertaining the above indicated view, we are constrained to the conclusion that the judgment of the court below must be reversed, and the petition dismissed.
 

 Judgment reversed.
 

 Marshall, C. J., Jones, Matthias, Allen and Kinkade, JJ., concur.
 

 Robinson, J., not participating.